FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 01, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>     v.<br><br>RONALD SHEHEE,<br><br>               Defendant. | No.   4:18-cr-06005-SMJ<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**\*\*\*BOP and USPO ACTION REQUIRED\*\*\*** |

Before the Court, without oral argument, is Defendant Ronald Shehee's Motion to Reduce Sentence, ECF No. 115. Defendant asks the Court to convert the remainder of his sentence to home confinement. ECF No. 115 at 38. The Government does not oppose the motion. ECF No. 121. The Court has reviewed the record in this matter, is fully informed, and grants the motion.

## BACKGROUND

Defendant was sentenced to seventy months' incarceration after pleading guilty to two counts of distributing methamphetamine under 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. ECF No. 105. Defendant is currently incarcerated in

FCC Lompoc detention facility in Santa Barbara County, California.[1] *See* ECF No. 115-1 at 31. Defendant now seeks immediate release because his health conditions put him at a high risk of contracting coronavirus and, if he does contract the virus, at a high risk of death from the disease. ECF No. 115.

Defendant, now forty-seven years old, is paraplegic. Related to his condition, he suffers from obesity, restrictive lung disease, and asthma. Because of these conditions, Defendant has a "lung age >84 years." ECF No. 115-1 at 5.

At FCC Lompoc, over 1,000 inmates have tested positive for COVID-19, and at least four have died. DOJ OIG Releases Reports of Remote Inspections of FCC Lompoc and FCC Tucson Examining the Institutions' Responses to the Coronavirus Pandemic, U.S. Dep't of Justice, Office of the Inspector General (last accessed August 21, 2020), https://oig.justice.gov/news/doj-oig-releases-reports-remote-inspections-fcc-lompoc-and-fcc-tucson-examining-institutions.

## LEGAL STANDARD

The Court's authority to amend a criminal defendant's sentence of incarceration, once it has been imposed, is narrow. *See* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that

---

[1] As of August 21, 2020, the State of California had the highest number of reported cases of the coronavirus and third-highest number of deaths, with 644,751 confirmed cases and 11,686 deaths. Cases in the U.S., CDC (last accessed August 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE – 2

….""). The statutory mechanism under which Defendant seeks early release permits a sentence reduction if the Court finds "extraordinary and compelling reasons warrant" such relief. *Id.* § 3582(c)(1)(A)(i). The Court must also consider the factors of sentencing set forth in 18 U.S.C § 3553(a). 18 U.S.C. § 3582(c)(1)(A). But that provision is only available "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A).

## DISCUSSION

### A.    Defendant has satisfied the administrative exhaustion requirement

Having reviewed the materials Defendant submitted with his motion for early release, the Court concludes he has satisfied the requirement of administrative exhaustion set out in 18 U.S.C. § 3582(c)(1)(A)(i). *See* ECF Nos. 115, 121. Specifically, it appears Defendant sought relief from the warden of his facility on April 18, 2020 and again on June 23, 2020. ECF No. 115-1 at 14. Defendant did not receive a response. More than thirty days have elapsed since the receipt of Defendant's request to the warden. As a result, the Court is satisfied Defendant has met the administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

//

**B.      Defendant has established extraordinary and compelling circumstances**

As an initial matter, district courts remain divided on the standard applicable to motions for compassionate release. *See United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024, at *2–3 (S.D. Cal. Mar. 3, 2020). Prior to substantial amendments to § 3582(c) in the First Step Act of 2018, only the Bureau of Prisons was permitted to bring a motion for compassionate release on an inmate's behalf. *See id.* Under that earlier regime, the U.S. Sentencing Commission identified three circumstances in which compassionate release was justified, none of which are relevant here, yet also recognized early release may be appropriate for "an extraordinary and compelling reason other than, or in combination with" the enumerated reasons. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). Crucially, however, justifications under that final catchall category were limited to those considered sufficiently extraordinary "by the Director of the Bureau of Prisons," and the guideline has not been amended since passage of the First Step Act of 2018. *Id.* § 1B1.13 cmt. n.1(D).

It is therefore unclear whether the district court is constrained to granting compassionate release only where either an enumerated category under the U.S. Sentencing Guidelines applies or the Bureau of Prisons has identified a different reason as sufficiently extraordinary and compelling, or whether the district courts are now entitled to make that determination independently. *Compare United States*

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE – 4

*v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) (collecting cases) ("[T]he most natural reading of the amended § 3582(c) . . . is that the district court assumes the same discretion as the B[ureau of Prisons] Director when it considers a compassionate release motion properly before it.") *with United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *3 (S.D. Ala. Aug. 13, 2019) (holding only Bureau of Prisons permitted to identify extraordinary and compelling reason).

However, the Court need not resolve this division, because such an enumerated category identifying an applicable extraordinary and compelling reason under the U.S. Sentencing Guidelines exists here. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Defendant is "suffering from a serious physical or medical condition" which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover" *Id.* In fact, Defendant is suffering from several serious medical conditions, including paraplegia, obesity, restrictive lung disease, and asthma. ECF No. 115-1.

Defendant's poor health is only compounded by the coronavirus pandemic. Defendant's health conditions and incarceration each greatly increase his risk of a fatal contraction of the coronavirus. *See*, *e.g.*, People With Certain Medical Conditions, CDC (last accessed August 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html. Incarceration alone increases the risk of contracting coronavirus by 550% and dying from the virus by 300%. Prisoners 550% More Likely to Get Covid-19, 300% More Likely to Die, New Study Shows, Forbes (last accessed August 12, 2020), https://www.forbes.com/sites/ alexandrasternlicht/2020/07/08/prisoners-550-more-likely-to-get-covid-19-300- more-likely-to-die-new-study-shows/#3ef2a27c3a72. This risk is even further magnified for Defendant because COVID-19 is so rampant at FCC Lompoc. Furthermore, other courts agree. *See, e.g., United States v. Davis*, No. 2:15-cr-00062-TLN, 2020 WL 3443400 (E.D. Cal. June 23, 2020) (granting compassionate release for 74-year-old with multiple conditions, including COPD, which is similar to Defendant's lung disease diagnosis); *United States v. Sarkisyan*, No. 15-cr-00234-CRB-15, 2020 WL 2542032 (N.D. Cal. May 19, 2020) (granting sentence reduction where defendant suffered from heart disease, kidney disease, and obesity). In view of Defendant's many risk factors, it is clear that "extraordinary and compelling" circumstances exist here.

**C.   Defendant is not a danger to the public and the 3553-factors favor release**

Defendant was sentenced to seventy months in prison for a drug offense. To date, Defendant has served just over nine months of his sentence. *See* ECF No. 109. Defendant was granted pretrial release and had no violations for the almost two years proceeding his conviction. *See* ECF No. 115 at 37. Defendant's Prisoner

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE – 6

Assessment Tool Targeting Estimated Risk and Need (PATTERN) score, assigned by BOP is "LOW." ECF No. 115-1 at 12. In his presentence investigation report, Defendant had three 1-point prior offenses and fell into criminal history category II. ECF No. 96 at 26.

Upon release, Defendant's Counsel has indicated that he will have stable housing residing with his mother, Jessie Weathers, in Pasco, Washington. Defendant will be able to safely quarantine in the residence. He will also receive disability benefits. ECF No. 96 at 22.

For these reasons, home confinement is consistent with the sentencing factors set out in 18 U.S.C. § 3553(a), even though he has served only a small percentage of his sentence. *See United States v. Locke*, No. CR18-0132 RAJ, 2020 WL 3101016 (W.D. Wash. June 11, 2020) (defendant served 6 months of 62-month sentence); *United States v. Gonzalez*, No. 2:18-cr-0232-TOR-15, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (defendant served 1 month of 10-month sentence). Home confinement reflects the seriousness of the offense and provides a more just punishment, because it is safer for Defendant yet still restricts Defendant's liberty. For the same reasons, it will protect the public and deter Defendant from future criminal conduct. *Id.* § 3553(a)(2). Given Defendant's limited criminal history, proven ability to comply with conditions of release, and stable housing

upon release, this Court does not believe that Defendant poses a risk to the public upon release to home confinement.

**D.    Conditions of release**

The Government's brief sets out several proposed conditions on Defendant's release. The Government proposes the Defendant's home confinement run consecutive to the 5-year term of supervised release already imposed by the Court. ECF No. 121 at 2. Defendant does not object to this. ECF No. 122 at 3. The Court finds that converting the remainder of Defendant's sentence to home confinement, followed by five years of supervised release is proper.

The Government also requests that BOP place Defendant in quarantine for 14 days, after which, if Defendant has tested negative for COVID-19, the Court would order Defendant's release. ECF No. 121 at 17–18. Defendant objects to this condition, citing the poor conditions at FCC Lompoc and the associated dangers. ECF No. 122 at 3–4. The Court finds that since Defendant will be self-isolating in home confinement and will not be flying, a period of quarantine at FCC Lompoc is unnecessary.

**CONCLUSION**

Due to the unprecedented and undeniably serious nature of the COVID-19 pandemic, this Court finds that Defendant has established "extraordinary and compelling" circumstances warranting early release. Defendant's compounded and

worsening health issues create an enormous risk of contracting the disease. This risk leads the Court to grant Defendant's Emergency Motion for Sentence Reduction and Compassionate Release.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant's Emergency Motion for Sentence Reduction and Compassionate Release, **ECF No. 115**, is **GRANTED**.

    *A.*  The remainder of Defendant's sentence of incarceration is **CONVERTED** to **HOME CONFINEMENT** to be served consecutively to the five-years supervised release already imposed by the Court.

    *B.*  Defendant will be restricted to his residence at all times, except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court-ordered appearances; court-ordered obligations; or other activities as preapproved by the U.S. Probation Office.

    *C.*  Upon arrival at his residence, Defendant is directed to **SELF-ISOLATE** for **14 days** to ensure that he does not spread COVID-19 into the community. During that time, Defendant shall not leave the residence.

//

2.    The Bureau of Prisons shall **RELEASE** Defendant from custody.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

provide copies to all counsel, the U.S. Probation Office, and the Bureau of Prisons.

**DATED** this 1st day of September 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judg

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE – 10